UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RONALD DAVIDSON,

                                        Plaintiff,

        - against -

CHUNG SHUK LEE, Shawangunk Correctional          **OPINION & ORDER**
Facility Health Services Director (in his individual
capacity); SUSAN MUELLER, Regional Medical        No. 17-CV-9820 (CS)
Director (in her individual capacity); CARL J.
KOENIGSMANN, Deputy Commissioner/Chief
Medical Officer (in his individual capacity); JOHN
and JANE DOEs, medical services staff at
Shawangunk Correctional Facility (sued in their
individual capacities),

                                        Defendants.
-------------------------------------------------------------x

<u>Appearances</u>:

Ronald Davidson
Bronx, New York
*Pro Se Plaintiff*

Kathryn Martin
Assistant Attorney General
Office of the Attorney General of the State of New York
White Plains, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 83.)  For the

reasons set forth below, Defendants' Motion is GRANTED.

I.      **BACKGROUND**

        The following facts are based on Defendants' Local Civil Rule 56.1 Statement and

supporting materials, and are undisputed unless otherwise noted.

Plaintiff did not file a responsive 56.1 Statement.  Local Civil Rule 56.1 requires the party opposing a motion for summary judgment to submit a counterstatement responding to the moving party's statement of material facts, indicating which facts are in dispute and would require a trial.  Local Rule 56.1(b).  Under the Local Rule, "[i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1(c)).  *Pro se* litigants are not excused from this requirement.  *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011).

Defendants served Plaintiff with the notice required under Local Civil Rule 56.2 – which notice explains the summary judgment process to *pro se* litigants – but failed to attach copies of Federal Rule of Civil Procedure 56 and Local Rule 56.1 as required.  (*See* ECF Nos. 90, 91.)  I do not find this failure to be fatal in this case, however.  The notice itself explains the obligation of the non-moving party to oppose with evidence and refers specifically to the missing documents.  Plaintiff easily could have requested them or found them in public sources.  Further, Plaintiff is an experienced *pro se* litigant, having filed dozens of cases over the years, *see, e.g.*, *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (noting in 1994 that "plaintiff at one point had at least 30 simultaneously pending suits"); *Davidson v. Canfield*, No. 07-CV-599, ECF No. 3 (W.D.N.Y. Oct. 24, 2007) ("Plaintiff has had at least 10 cases dismissed by this Court for strike reasons"); *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 439 (S.D.N.Y. 2006) ("This suit is one of the more than 150 lawsuits that Davidson has brought against DOCS and against DOCS employees during his 30 years of incarceration for triple homicide."), several of which involved summary judgment motions, *see, e.g.*, *Davidson v. Pearson*, No. 02-CV-88, 2007 WL 952047 (W.D.N.Y. Mar. 28, 2007); *Davidson v. Bartholome*, 460 F. Supp. 2d 436 (S.D.N.Y. 2006);

*Davidson v. Talbot*, No. 01-CV-473, 2006 WL 1877144 (N.D.N.Y. July 5, 2006); *Davidson v. Donnelly*, No. 00-CV-205, 2004 WL 1941349 (W.D.N.Y. Aug. 29, 2004); *Davidson v. Kyle*, No. 01-CV-706, 2004 WL 941458 (W.D.N.Y. Mar. 30, 2004); *Davidson v. Scully*, No. 81-CV-390, 2001 WL 963965 (S.D.N.Y. Aug. 22, 2001).

In at least two of those cases, Plaintiff, proceeding *pro se*, filed a response to a Rule 56.1 Statement, indicating that he knows both how to do so and that he is required to do so. *See Kyle*, 2004 WL 941458, at *1 n.2; *Donnelly*, 2004 WL 1941349, at *1. And in *Bartholome*, 460 F. Supp. 2d at 445, Judge McMahon set forth the relevant portions of Rule 56.1 in her decision granting the defendants' motion for summary judgment and explicitly noted, "Plaintiff [Ronald Davidson] has failed to file a proper Rule 56.1 statement." Plaintiff has also complied with Northern District Local Rule 7.1(A)(3), now Local Rule 56.1, *see Davidson v. Talbot*, No. 01-CV-473, ECF No. 57 (N.D.N.Y. Nov. 17, 2004) (plaintiff, proceeding *pro se*, provided a response to Defendants' Rule 7.1(A)(3) statement of undisputed material facts), and filed responsive 56.1 statements in cases with the assistance of counsel, *see Scully*, No. 81-CV-390, ECF No. 179 (S.D.N.Y. May 3, 1999); *Davidson v. Murray*, No. 92-CV-283, ECF No. 214 (W.D.N.Y. Sept. 16, 2004).

Plaintiff's experience with summary judgment motions renders harmless Defendants' failure to attach the rules to the 56.2 notice, and that failure does not excuse Plaintiff's failure to file a responsive 56.1 Statement. *Cf. Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009) (district courts should consider *pro se* litigant's "experience with the particular procedural setting presented" in withdrawing *pro se* litigant's special status). I consider any properly supported facts in Defendants' 56.1 Statement admitted.

The Court nevertheless thoroughly examined Plaintiff's submission for properly supported disputes, but in Plaintiff's memorandum of law, Plaintiff only had one citation to the record.  Beyond the one record cite, Plaintiff twice refers to the fifty-five pages of exhibits he attached to his opposition papers.  (*See* ECF No. 96 ("P's Opp.") ¶¶ 26, 46 (arguing that "the exhibits attached hereto show" that Plaintiff "and/or Miton Zelermyer, Esq. requested that surgeries be postponed for various legitimate reasons, such as to obtain updated MRIs, to allow me to recover from recent general anesthesias, etc." and that "defendants routinely sent [Plaintiff] notices to discontinue medicines prior to scheduled upcoming surgeries").)  Plaintiff's failure to support his arguments with evidence and law is inexcusable as I explicitly told him at the March 8, 2021 conference that he had to support his arguments with both.  (*See* Minute Entry dated Mar. 8, 2021.)  It is not the job of a district court judge to sift through the entire record, the fifty-five pages of exhibits Plaintiff attaches to his memorandum (many of which are handwritten medical records), or even entire documents in search of a fact dispute.  *See Kalola v. Int'l Bus. Machines Corp.*, No. 13-CV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017) ("a district court is obligated only to consider the materials cited to it by the parties" and *pro se* plaintiff "cannot expect the Court to comb the record to find evidence not highlighted in Plaintiff's motion papers – summary judgment is not a game of hide and seek") (cleaned up).  Nor can Plaintiff simply incorporate the allegations in his complaint, as he attempts to do.  (P's Opp. ¶ 1.) "The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; the opposing party cannot defeat summary judgment by relying on allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are [not] credible."  *Robinson v. Sanctuary Rec. Groups, Ltd.*, 826 F. Supp. 2d 570, 574 (S.D.N.Y. 2011).

Nevertheless, given Plaintiff's *pro se* status, the Court has thoroughly examined Plaintiff's entire submission, including allegations in the Complaint to the extent based on Plaintiff's personal knowledge, for properly supported disputes.

**A.    Facts**

Plaintiff Ronald Davidson brings this action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Chung Shuk Lee ("Lee"), Dr. Susan Mueller ("Mueller"), Dr. Carl J. Koenigsmann ("Koenigsmann"), and unidentified medical services staff, in their individual capacities.  He alleges that Defendants failed to provide him with adequate medical treatment while he was in the custody of the Shawangunk Correctional Facility ("Shawangunk").

Lee was Plaintiff's primary care provider at Shawangunk.  (ECF No. 85 ("Ds' 56.1") ¶ 3.)  He was also the Facility Health Services Director.  (*Id.*)  While Plaintiff was in custody, Lee referred Plaintiff to numerous outside specialists.  (*Id.* ¶ 11.)  Plaintiff testified that he had "50 or more" appointments with outside specialists between 2014 and 2016.  (ECF No. 86-1 at 110:7-23; *see* Ds' 56.1 ¶ 12.)

Mueller is a Regional Medical Director ("RMD") employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), and oversees the region that includes Shawangunk.  (Ds' 56.1 ¶ 4.)  Koenigsmann was the "Deputy Commissioner/Chief Medical Officer of DOCCS and was responsible for the overall medical care provided to inmates."  (*Id.* ¶ 10.)

**1.    Throat**

Lee met with Plaintiff many times regarding Plaintiff's throat pain, which Plaintiff claimed was a symptom of gastroesophageal reflux disease ("GERD").  (*Id.* ¶ 13.)  Plaintiff did not complain about or report other symptoms of GERD, but Lee prescribed Plaintiff Prilosec and

in December 2014 referred him to a gastroenterologist for an endoscopy. (*Id.* ¶¶ 14-16; ECF No. 89 ("Lee Decl.") ¶¶ 11-13.) The gastroenterologist found that Plaintiff had "a normal esophagus and duodenum and erythematous mucosa." (Ds' 56.1 ¶ 17.) The gastroenterologist also took biopsies, which were "negative for organisms" and revealed "unremarkable esophageal squamous mucosa." (*Id.* ¶¶ 17-18.) Lee continued to treat Plaintiff and submit requests for Plaintiff to have follow-up appointments with the outside specialist. (*Id.* ¶ 19.)

To refer an inmate for specialty treatment, Lee must send a request to DOCCS's outside review agency. (*Id.* ¶ 6.) The review agency can approve the request, request additional information, or preliminarily deny the request. (*Id.*) Requests that are preliminarily denied are provided to the RMD for review. (*Id.* ¶ 7.) In April and July 2015, DOCCS's outside review agency denied Lee's requests for Plaintiff to have follow-up examinations "because Plaintiff had no throat lesions, and [because] his previous testing was negative." (*Id.* ¶ 20.) Mueller agreed with the outside review agency and upheld the denials. (*Id.* ¶ 21.)

In September or October 2015, Koenigsmann asked Mueller "to review a letter from Plaintiff's attorney." (*Id.* ¶ 22.) In the letter, Plaintiff's then-attorney asked that Plaintiff receive Nexium rather than Prilosec, be provided with a foam wedge for sleeping, and "be referred to a surgeon for a Nissen Fundoplication procedure to treat [Plaintiff's GERD] symptoms." (*Id.*; ECF No. 86-39.) Based on Mueller's experience as a surgeon, familiarity with the Nissen Fundoplication procedure, and review of Plaintiff's medical records, Mueller agreed with Lee's decision not to refer Plaintiff for the requested surgical procedure. (Ds' 56.1 ¶ 25.)[1]

---

[1] According to Mueller, the Nissen Fundoplication procedure is a procedure of "last resort reserved for patients with severe GERD, complications of GERD such as Barrett's esophagus or peptic stricture, and mixed paraesophageal hernias." (ECF No. 88 ¶ 16.)

On October 13, 2015, Lee requested that Nexium be approved for Plaintiff.  (*Id.* ¶ 26.)

Mueller approved the request that same day.  (*Id.* ¶ 27.)  Lee also submitted, and Mueller

approved, a request for Plaintiff to be evaluated by an otolaryngologist.  (*Id.* ¶ 28.)  The

otolaryngologist examined Plaintiff on December 8 and recommended (i) an increase in

Plaintiff's Nexium dosage, (ii) a modified barium swallow procedure, (iii) a foam wedge, and

(iv) a consultation with a gastroenterologist for a Nissen Fundoplication procedure.  (*Id.* ¶ 29.)

Based on these recommendations, Lee submitted a request to increase Plaintiff's Nexium dosage,

which was approved, and referred Plaintiff for the modified barium procedure, which was

performed in February.  (*Id.* ¶¶ 31, 33, 34.)  According to Lee, he did not order a foam wedge

"[g]iven the lack of clinical findings of GERD and . . . security concerns," (*id.* ¶ 32), and he did

not refer Plaintiff for the surgical consultation because Plaintiff did not have two requirements

for the procedure – "there was no clinical evidence of GERD," and Plaintiff did not have a hiatal

hernia, (*id.* ¶ 30).[2]  Plaintiff asserts that "defendants['] own Exhibit" shows that he had a "long

HX [history] of GERD/Hiatal hernia."  (P's Opp. ¶ 22 (quoting ECF No. 86-3.).)[3]

Plaintiff was released from prison on April 5, 2016, (Ds' 56.1 ¶ 90), and in July 2017

"underwent a 'Stretta' procedure" that provided only minor, temporary relief, (*id.* ¶¶ 36-37).  He

apparently has not had a Nissen Fundoplication procedure.

---

[2] The report from Plaintiff's modified barium procedure "indicated '[e]sophageal motility was normal . . . .   No mucosal ulcerations were identified . . . .   There were not strictures . . . . No hiatal hernia was present and there was no spontaneous gastroesophageal reflux during the examination.'"  (*Id.* ¶ 35 (quoting ECF No. 86-12) (alteration in original).)

[3] ECF No. 86-3 appears to be the request and report form for the endoscopy.  It is not clear if the quoted language represents what the doctor thought or what Plaintiff told the doctor. In any event, the "normal" and "unremarkable" findings appear on the same document.

2.      **Shoulders**

Plaintiff also experienced shoulder pain, which he attributes to an incident that occurred in the 1990s.  (*Id.* 56.1 ¶ 46; ECF No. 86-1 at 56:17-57:16.)  Plaintiff reported his shoulder pain to Lee who, in turn, referred him to an orthopedic specialist, Dr. Holder, who Plaintiff saw numerous times.  (Ds' 56.1 ¶¶ 47-49.)

Plaintiff's left shoulder surgery was scheduled to take place on February 17, 2015, but was cancelled because Plaintiff refused the pre-operative EKG after requesting that the surgery be postponed.  (*Id.* ¶¶ 51-53.)  The surgery was then rescheduled for June 2015, but Plaintiff's attorney asked on Plaintiff's behalf that it be postponed until a new MRI could be obtained.  (*Id.* ¶ 54; ECF No. 86-17.)  Dr. Lee cancelled the surgery because Plaintiff knew the date it was scheduled, which posed a security risk because an inmate could coordinate with individuals on the outside if he knew in advance when he would be at an outside medical facility.  (Ds' 56.1 ¶ 55; Lee Decl. ¶¶ 30-31.)  Plaintiff says it is easy to infer when a procedure will take place.  (P's Opp. ¶ 46.)  In any event, Plaintiff got his wish, and the June 2015 surgery did not go forward.

Lee referred Plaintiff back to Dr. Holder for a re-evaluation of his left shoulder on July 7, 2015.  (Ds' 56.1 ¶ 57.)  Two weeks later, Lee referred Plaintiff to Dr. Holder for an evaluation of his right shoulder.  (*Id.* ¶ 56.)  On August 13, Dr. Holder gave Plaintiff a steroid injection – because Plaintiff had experienced relief from steroid injections in the past – and "recommended left shoulder surgery if there was no improvement from the injection."  (*Id.* ¶ 58.)  Plaintiff met with Dr. Holder on October 8 for his right shoulder, (*id.* ¶ 59), and was granted approval for right shoulder surgery a few days later, (*id.* ¶ 60).

Lee referred Plaintiff back to Dr. Holder on November 9 due to Plaintiff's left shoulder pain.  (*Id.* ¶ 61.)  Dr. Holder met with Plaintiff on December 10 and noted that Plaintiff

experienced no relief from the injection and that Plaintiff's left shoulder surgery should be performed before his right shoulder surgery.  (*Id.* ¶ 63.)  Staff in the Coordinated Specialty Care Unit for DOCCS scheduled Plaintiff's left shoulder surgery for April 5, 2016.  (*Id. ¶* 65.)  Lee was not involved in the scheduling of Plaintiff's surgery.  (*Id.* ¶ 66.)

On March 16, 2016, Plaintiff requested to postpone his surgery, (*id.* ¶ 69), and he refused pre-operative lab work and x-rays, as he was scheduled to be paroled on April 5, 2016, (ECF Nos. 86-26, 86-27, 86-34.)  As of Plaintiff's November 6, 2020 deposition, he had not had surgery on his left shoulder.  (Ds' 56.1 ¶ 73.)[4]

### 3.    Left Knee

Plaintiff was scheduled to undergo surgery on his left knee in November 2014, but Plaintiff requested that this surgery be postponed.  (*Id.* ¶¶ 74-75.)  It was then scheduled for April 28, 2015, but on April 22, Plaintiff asked to postpone again so that he could get a second opinion.  (*Id.* ¶¶ 76-77.)  Lee referred Plaintiff for an MRI, which took place in May.  (*Id.* ¶ 78.)

In June, Plaintiff was seen by Dr. Holder.  (*Id.* ¶ 79.)  Dr. Holder could not view the CD that contained Plaintiff's MRI, but based on the MRI report and an examination of Plaintiff, Dr. Holder noted that the MRI revealed "no change" compared to prior exams.  (*Id.*)  Plaintiff was able to squat and lunge without difficulty, and he did not complain of pain or swelling.  (*Id.*)  Dr. Holder concluded that Plaintiff did not need surgery or an injection.  (*Id.*)

### 4.    Back

Plaintiff also experienced back pain.  In December 2014, Lee submitted a request for Plaintiff to be evaluated for physical therapy.  (*Id.* ¶ 81.)  Plaintiff was approved for twelve

---

[4] Plaintiff testified that he did have surgery on his left bicep.  (ECF No. 86-1 at 71:2-72:11.)

physical therapy sessions, (*id.* ¶ 82), but was discharged by his physical therapist after nine

sessions because the physical therapist believed that "Patient is stagnant . . . .  PT is no longer a

medical necessity," (*id.* ¶¶ 83, 85; ECF No. 86-35 at 9).

In January 2016, Plaintiff complained of back pain again during a sick call appointment

with Lee.  (Ds' 56.1 ¶ 86.)  Plaintiff requested an appointment with an outside neurosurgeon and

noted that he did not want additional physical therapy.  (*Id.* ¶ 87.)  Lee did not refer Plaintiff to a

neurosurgeon because Plaintiff was not experiencing acute pain, but planned "to re-evaluate

Plaintiff in one month.  If Plaintiff's pain increased, [he] would consider referring [Plaintiff] to a

pain specialist."  (Lee Decl. ¶ 54; *see* Ds' 56.1 ¶ 88; ECF No. 86-34 at 10.)  Plaintiff did not

complain of back problems again.  (Ds' 56.1. ¶ 89.)

### 5.    Dental

Plaintiff's dental records show that Plaintiff had dental appointments on February 5,

2015, March 25, 2015, April 8, 2015, April 22, 2015, September 25, 2015, and February 4, 2016.

(*Id.* ¶ 42.)  Plaintiff testified that when he would speak to Dr. Lee about his dental issues, Dr. Lee

would "refer [him] back to the dentist that [he] was having issues with."  (ECF No. 86-1 at

97:10-98:9.)  The named Defendants did not provide Plaintiff with dental care.  (Ds' 56.1 ¶ 44.)

"Dentists employed by DOCCS address inmate dental issues, just as physicians employed

by DOCCS address inmate medical issues."  (*Id.* ¶ 39.)  Similar to how DOCCS physicians

report to an RMD who reviews denials of specialty medical treatment, "dentists report to a

Regional Dental Director, who reviews denials of specialty dental treatment."  (*Id.* ¶ 40.)

B.     **Procedural History**

Plaintiff, who was represented by counsel at the time, commenced this action on December 15, 2017.  (*See* ECF No. 3 ("Complaint").)[5]  The case was assigned to Judge Vincent L. Briccetti.  On April 20, 2018, Defendants moved to dismiss the complaint for improper venue, (ECF Nos. 16, 17), but their motion was denied, (ECF No. 28).

On October 16, 2019, Plaintiff's counsel moved to withdraw.  (ECF Nos. 49, 50.)  Judge Briccetti granted that motion on November 4, 2019.  (ECF No. 56.)  On January 16, 2020, Plaintiff moved for Judge Briccetti to recuse himself.  (ECF Nos. 60, 61.)  Judge Briccetti denied Plaintiff's motion, but recused himself *sua sponte*.  (ECF No. 69.)  The case was reassigned to me on March 30, 2020.

At the close of discovery, Defendants filed a pre-motion letter in anticipation of their motion for summary judgment.  (ECF No. 77.)  The Court held a pre-motion conference on March 8, 2021 and set a briefing schedule for Defendants' motion.  (Minute Entry dated Mar. 8, 2021.)  On July 1, 2021, Defendants filed their motion, (ECF No. 83), along with a memorandum of law, (ECF No. 84 (Ds' Mem.")), Local Rule 56.1 Statement, (ECF No. 85), and declarations, (ECF Nos. 86 through 89).  On September 21, 2021, Plaintiff filed his opposition.  (P's Opp.)  Defendants submitted their reply memorandum on October 4, 2021.  (ECF No. 97 ("Ds' Reply").)

---

[5] Plaintiff filed the Complaint on December 14, 2017, (ECF No. 1), but the Court's Electronic Case Filing ("ECF") System rejected the filing as a deficient pleading.  Plaintiff refiled it on December 15, 2017.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . .

admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  If "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

Ordinarily, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).  But *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (cleaned up).  Further, "it is appropriate to charge a *pro se* litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements with which he is familiar as a result of his extensive prior experience in the courts."  *Sledge*, 564 F.3d at 109. Here, the Court does not afford Plaintiff special solicitude because, as noted above, he has extensive experience with litigation in general and motions for summary judgment in particular. *See id.* ("[I]t is our recommendation that, when a court considers whether to withdraw a *pro se* litigant's special status, it should consider not only that litigant's lifetime participation in all forms of civil litigation, but also his experience with the particular procedural setting presented.").  The outcome here would be the same, however, even if special solicitude were applied.

Lastly, even though Plaintiff's submission did not contest the facts set forth above, I have thoroughly examined the record to determine whether any material issues of fact remain for trial. *See Buckley v. County of Suffolk*, No. 10-CV-1110, 2013 WL 122972, at *1 (E.D.N.Y. Jan. 9, 2013). Even where the opposing party fails to submit evidence disputing the moving party's factual presentation, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (cleaned up).

### B. <u>Statute of Limitations</u>

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017) (cleaned up); *see Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). New York provides a three-year statute of limitations for personal injury claims. N.Y. C.P.L.R. § 214(5). Thus, the statute of limitations for a § 1983 claim in this District is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989).

### C. <u>Personal Involvement</u>

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (cleaned up). While *Colon* laid out a special test for supervisory liability, outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit recently clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.'"

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

"Simply put, there's no special rule of liability for supervisors." *Id.* While "'[t]he factors

necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue'

because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at

676) (second alteration in original), "[t]he violation must be established against the supervisory

official *directly*," *id.* (emphasis added).

### D.   Medical Indifference

The Eighth Amendment imposes a duty upon prison officials to ensure that inmates

receive adequate medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Yet not

every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth

Amendment only when two requirements" – one objective and one subjective – "are met."

*Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (cleaned up).

First, the prisoner must prove, objectively, that he was "actually deprived of adequate

medical care[,] . . . [as] the prison official's duty is only to provide reasonable care," *id.* at 279

(citing *Farmer*, 511 U.S. at 844-47), and "that the alleged deprivation of medical treatment [wa]s

. . . 'sufficiently serious' – that is, the prisoner must prove that his medical need was 'a condition

of urgency, one that may produce death, degeneration, or extreme pain,'" *Johnson v. Wright*, 412

F.3d 398, 403 (2d Cir. 2005) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996));

*see Williams v. Raimo*, No. 10-CV-245, 2011 WL 6026115, at *3 (N.D.N.Y. July 22, 2011) ("no

distinct litmus test" for determining whether medical condition is "serious," but court may look

at non-exhaustive list of factors, including whether (1) impairment is one that reasonable doctor

would find important and worthy to treat, (2) condition affects individual's daily life, and (3)

prisoner suffers from chronic and substantial pain).  Where the inadequacy alleged "is in the medical treatment given, the seriousness inquiry is narrower," *Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (summary order) (cleaned up), "and the focus is on the alleged inadequate treatment, not the underlying condition alone," *Sanders v. City of New York*, No. 16-CV-7426, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018) (cleaned up).  "Specifically, the court must consider the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls." *Id.* (cleaned up).  If "the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Goris*, 402 F. App'x at 584-85 (cleaned up); *see Smith v. Carpenter*, 316 F.3d 178, 186-87 (2d Cir. 2003) (among other things, court must look at reasons for and effect of delay in treatment).

Second, the prisoner must prove, subjectively, that the charged official acted with a sufficiently culpable state of mind.  *Salahuddin*, 467 F.3d at 280-81; *see Farmer*, 511 U.S. at 835 ("[D]eliberate indifference entails something more than mere negligence . . . [but] it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").  The prisoner must prove that the charged official knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . must also [have] draw[n] the inference.'"  *Johnson*, 412 F.3d at 403 (quoting *Farmer*, 511 U.S. at 837); *see Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*per curiam*) (equating "deliberate indifference" with criminal "recklessness").

"It is well-established that [neither] mere disagreement over the proper treatment,"

*Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998), nor "[m]edical malpractice . . . become

a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S.

97, 106 (1976); *see Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312

(S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (*e.g.*, the need for

X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not

adequate grounds for a Section 1983 claim.  These issues implicate medical judgments and, at

worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *cf.*

*Choice v. Blackwell,* No. 01-CV-1931, 2002 WL 32079466, at *7 (D.S.C. Mar. 29, 2002)

("[A]lthough the provision of medical care by prison officials is not discretionary, the type and

amount of medical treatment is discretionary.").  Rather, to state an Eighth Amendment

deliberate indifference claim, an inmate "must demonstrate that the defendants acted or failed to

act while actually aware of a substantial risk that serious inmate harm would result."  *Farid v.*

*Ellen*, 593 F.3d 233, 248 (2d Cir. 2010) (cleaned up).  "[P]rison officials . . . may be found free

from liability if they responded reasonably to the risk, even if the harm ultimately was not

averted."  *Farmer*, 511 U.S. at 844.

E.    **Qualified Immunity**

Qualified immunity shields a government official from liability for civil damages if either

(1) the "official's conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)

(*per curiam*) (cleaned up); or (2) "it was objectively reasonable for [the official] to believe that

[his or her] actions were lawful at the time of the challenged act," *Simpson v. City of N.Y.*, 793

F.3d 259, 268 (2d Cir. 2015) (cleaned up).  "The objective reasonableness test is met – and the

defendant is entitled to immunity – if [officials] of reasonable competence could disagree on the legality of the defendant's actions." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (cleaned up). "The objective element of this test requires the court to look beyond the generalized constitutional protection" and "determine whether the law is clearly established in a more particularized sense," given the specific factual situation with which the official is confronted. *Kerman v. City of N.Y.*, 261 F.3d 229, 236 (2d Cir. 2001).

Qualified immunity entitles public officials to "an immunity from suit rather than a mere defense to liability . . . . [I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (cleaned up).

## III.   DISCUSSION

### A.   Lee

Assuming for the sake of argument that there are fact issues as to the first prong of the deliberate indifference test, Plaintiff has set forth no facts showing that Lee's treatment of him was accompanied by the requisite state of mind.[6]  That Plaintiff did not always receive the type of treatment he wanted does not give rise to a deliberate indifference claim. *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Johnson v. Schiff*,

---

[6] Plaintiff argues that Defendants are "cherry picking [his] medical records to their advantage," that the medical records Defendants provide are "handwritten and illegible," that because he "was relieved of counsel over strenuous objections, [he has] been unable to depose defendants or hire expert witnesses," and that he "can't afford expert witnesses or a stenographer." (P's Opp. ¶¶ 5-7.)  The Court is mindful that *pro se* litigants face obstacles, but as has been explained to Plaintiff many times, there is no right to counsel in civil cases and the Court cannot appoint counsel.  (*E.g.* ECF No. 74.).  Further, "[t]he substantive burdens of Rule 56, *i.e.,* evidence admissible at a trial must be submitted which creates a genuine issue of material fact, apply to *pro se* Plaintiffs."  *Glendora v. Marshall*, 947 F. Supp. 707, 719 (S.D.N.Y. 1996), *aff'd*, 129 F.3d 113 (2d Cir. 1997).

No. 17-CV-8000, 2019 WL 4688542, at *12 (S.D.N.Y. Sept. 26, 2019) (to the same effect); *Gay v. Terrell*, No. 12-CV-2925, 2013 WL 5437045, at *19 (E.D.N.Y. Sept. 27, 2013) ("In a case such as this one in which the prisoner received medical treatment, deliberate indifference will not be found unless the medical attention rendered was so woefully inadequate as to amount to no treatment at all.") (cleaned up).

### 1.    Throat

Plaintiff claims that Lee was deliberately indifferent to his throat pain because Lee failed to (i) refer him to a surgeon for a consultation for a Nissen Fundoplication procedure, (ii) prescribe him certain medication, and (iii) order him "the specialist ordered foam wedge." (P's Opp. ¶¶ 14-15, 21, 24; Complaint ¶¶ 46-49, 59.) But "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds*, 151 F. Supp. 2d at 312; *see Hernandez v. Keane*, 341 F.3d 137, 146-47 (2d Cir. 2003) (decision to perform or not to perform a surgery is one of "medical judgment" and "is precisely the sort of issue that cannot form the basis of a deliberate indifference claim"); *Lopez v. Phipps*, No. 18-CV-3605, 2019 WL 2504097, at *10 (E.D.N.Y. June 17, 2019) ("Plaintiff's disagreement with the manner in which his condition was treated and his belief that he should have received more or different treatment is not, without more, sufficient to state a constitutional claim.").

Plaintiff argues that "defendants['] own Exhibit" – a medical record dated December 17, 2014 – shows that Plaintiff had a history of GERD. (P's Opp. ¶ 22.)[7] But whether Plaintiff had a history of GERD is not material on this motion. The same medical record states that Plaintiff's

---

[7] As noted, (*see* note 3 above), it is far from clear that Defendants concede a history of GERD, but I will assume so for purposes of the motion.

last endoscopy in 2012 was normal and that his follow-up endoscopy in January 2015 was also

normal.  (ECF No. 86-3, *see* ECF No. 86-4.)  Additionally, the undisputed evidence shows that

Lee met with Plaintiff several times to address his throat pain, referred him to outside specialists,

prescribed him medication, and increased his medication dosage.  (Ds' 56.1 ¶¶ 13, 15, 16, 19, 26,

28, 31, 33.)  Thus, even though Lee only followed two of the otolaryngologist's four

recommendations, it cannot be said that "the medical attention rendered was so woefully

inadequate as to amount to no treatment at all."  *Gay*, 2013 WL 5437045, at *19 (cleaned up).

And regardless, the Court agrees with Defendants that even if "the failure to refer Plaintiff for a

consultation for the Nissen procedure and the failure to provide him with a foam wedge were

sufficiently serious to satisfy the objective prong of a medical indifference claim, there is no

evidence Dr. Lee acted with a sufficiently culpable state of mind."  (Ds' Reply at 4-5.)[8]  Dr. Lee

attended diligently to Plaintiff's condition, provided regular treatment and outside consultations,

and had reasons for not pursuing certain options Plaintiff requested.

### 2.    Shoulders & Left Knee

It is undisputed that Lee met with Plaintiff regarding his shoulder and left knee pain and

that Lee referred Plaintiff to an outside orthopedic specialist.  Thus, Plaintiff's medical

indifference claims related to Plaintiff's shoulders and left knee turn on whether Plaintiff can

establish both that (i) the failure to perform the surgeries as scheduled was sufficiently serious

---

[8] The Court does not regard these decisions to be sufficiently serious.  The Nissen procedure is for the most serious GERD cases and Plaintiff lacked clinical evidence of same, *see* page 6 and note 1 above, and given the other treatment Plaintiff was receiving, the lack of the wedge could hardly have contributed so significantly as to cause degeneration or extreme pain.

and (ii) Lee knew of and disregarded an excessive risk when he cancelled them.  The Court finds

that the answer to both of these questions is no, but focuses on the latter.[9]

As an initial matter, that Plaintiff may have asked for his surgeries to "be postponed for

various legitimate reasons," (P's Opp. ¶ 26), does not change the fact that they did not take place

as scheduled at Plaintiff's request or because Plaintiff refused the pre-operative preparations.[10]

The delay in those surgeries is thus not fairly laid at Dr. Lee's door.

While Plaintiff's attorney asked to postpone Plaintiff's June 2015 shoulder surgery, (ECF

No. 86-17), Defendants allege it was cancelled "[b]ecause Plaintiff knew the date of the surgery,

which was a security risk."  (Ds' 56.1 ¶ 55; Lee Decl. ¶¶ 30-31.)  Plaintiff disagrees, arguing that

his knowledge of the date of a scheduled surgery does not "justify cancelling" it, (P's Opp. ¶¶

45-51),[11] and that "if defendants believed that [he] knew the date of a scheduled surgery they

could have brought an additional guard along," (id. ¶ 51.)  Assuming it was even possible for

---

[9] With respect to the former, Plaintiff provides no evidence that the failure to perform either surgery was "sufficiently serious" or "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson*, 412 F.3d at 403.  As of November 6, 2020, Plaintiff had not had surgery on his left shoulder despite being released from prison in 2016.  (ECF No. 86-1 at 71:2-21.)  Additionally, Plaintiff testified that he does not even "recall surgery being recommended for the knee," (*Id.* at 85:14-18), which is consistent with Defendants' argument that Dr. Holder "did not recommend surgery or injections as of June 2015." (Ds' Mem. at 20.)

[10] Plaintiff asked to postpone his November 2014 and April 2015 left knee surgeries, (ECF Nos. 86-29, 86-31), and his February 2015 shoulder surgery, (ECF No. 86-16).

[11] Plaintiff argues that he "knew the dates of the surgeries" because "elective surgeries aren't done on weekends" and it was "easy to predict the actual or approximate date of surgeries" based on when the defendants sent him "notices to discontinue medicines."  (*Id.* ¶ 45-46.) Plaintiff also argues that it is not uncommon for prisoners to know the dates of events like court appearances, funerals, or visits, and such events "are not cancelled by the jailers."  (*Id.* ¶ 46.) The increased security risk from a visit to a civilian hospital, as opposed to a prison visiting room or a courthouse, is obvious, and accompanying a prisoner to a funeral is obviously a more time-limited endeavor than accompanying him to surgery.  Moreover, the issue is not whether Plaintiff agrees with Dr. Lee's reasoning – which happened to effectuate Plaintiff's request for a postponement – but whether Dr. Lee was deliberately indifferent to Plaintiff's serious medical needs.

Defendants to bring an additional guard along on the date of the scheduled surgery, and that doing so would alleviate the security risk, there is no indication that Lee was responsible for making – or had the authority to make – these types of decisions.  And even if he did, there is no indication that he knew that cancelling a shoulder surgery – that Plaintiff twice requested be postponed – posed an excessive risk to Plaintiff's health, and that he disregarded that risk. Further, Dr. Lee continued to monitor Plaintiff's left shoulder, referring him back to Dr. Holder within the month, and ultimately – after Dr. Holder concluded that the injection had been ineffective – approving the rescheduling of the surgery.

Plaintiff also argues that Defendants intentionally scheduled that surgery "on or about the very day [he] was to be released on parole."  (*Id.* ¶ 35.)  But Plaintiff provides no evidence that Lee (or any of the Defendants) had any involvement in the scheduling of that surgery.  In contrast, Defendants provide evidence that Lee was not involved in scheduling surgeries and that the scheduling of outside surgery is not even conducted at the facility level, but is done by Nurse Schedulers in the Coordinated Specialty Care Unit for DOCCS located in Albany, New York. (*See* Lee Decl. ¶¶ 7, 39-40; *see also* Ds' 56.1 ¶¶ 8, 65-66.)

In short, Plaintiff provides no evidence that Lee acted with a sufficiently culpable mind in cancelling Plaintiff's scheduled surgeries.[12]

### 3.    Back

Turning to Plaintiff's back pain, the Court agrees with Defendants that "Defendants' moving papers provide great detail regarding the medical care Dr. Lee provided to Plaintiff to address his back issues," and "Plaintiff fails to address, much less refute, Defendants' evidence."

---

[12] Plaintiff's right shoulder surgery was never scheduled because Plaintiff, based on Dr. Holder's recommendation, wanted the left shoulder surgery before the right shoulder surgery. (Ds' 56.1 ¶¶ 62-63; ECF Nos. 86-23, 86-24.)

(Ds' Reply at 2.)  Thus, Plaintiff's claims against Lee pertaining to his back are dismissed.  *See*

*Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,'

completely unsupported by evidence, is not sufficient to overcome a motion for summary

judgment") (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).[13]

 To be clear, the Court "reviewed the statement of undisputed facts submitted by

[Defendants], which included relevant citations to the record," to be sure Defendants have met

their burden.  *Jackson,* 766 F.3d at 195 (cleaned up).  In short, the record reflects that Lee met

with Plaintiff about his back pain, referred Plaintiff to a physical therapist who met with Plaintiff

nine times, and evaluated Plaintiff when his back pain continued.  (Ds' 56.1 ¶¶ 81-83, 86.)  Lee

did not refer Plaintiff to an outside neurosurgeon because Plaintiff was not experiencing acute

pain, but Lee intended to re-evaluate Plaintiff's back pain in one month.  (*Id.* ¶ 88.)[14]  Plaintiff,

however, did not complain of back problems again.  (*Id.* ¶ 89.)  On this record, no reasonable

jury could find either a sufficiently serious deprivation or a sufficiently culpable state of mind.

---

[13] Alternatively, the Court could dismiss Plaintiff's claims as abandoned.  *See Jackson*, 766 F.3d at 194-95 ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

[14] Lee's decision to wait one month before referring Plaintiff to a neurosurgeon falls short of a constitutional violation.  *See Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) ("[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm. . . .  The Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed medical care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years.") (cleaned up).

### 4.      Other Claims

In his complaint, Plaintiff alleges constitutional violations dating back as far as 2011. Because Plaintiff filed his complaint on December 15, 2017, any claims that accrued before December 15, 2014 are time-barred and are, therefore, dismissed.[15]  Additionally, Plaintiff does not refer to these claims in his opposition papers, so any such claims may also be dismissed as abandoned.  *See Taylor*, 269 F. Supp. 2d at 75.

### B.      Mueller

Defendants argue that "Dr. Mueller had very little involvement in Plaintiff's treatment, and the limited involvement she did have does not rise to the level of medical indifference." (Ds' Reply at 5.)  Plaintiff counters that Defendant Mueller denies ever speaking with him but that they "spoke on numerous occasions when she entered the medical unit" at Shawangunk while he was "in the unit's 'bullpen' (holding area) awaiting sick call or treatments."  (P's Opp. ¶¶ 3-4.)[16]

Plaintiff provides no information about his alleged interactions with Defendant Mueller. But even if the Court were to assume that Plaintiff complained to Mueller about his medical care, merely complaining to a supervisory official is insufficient to establish personal involvement. *See Allah v. Annucci*, No. 16-CV-1841, 2018 WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018)

---

[15] As Defendants correctly argue, "Dr. Lee's discontinuance of Nexium in 2012, the failure to provide a foam wedge prior to December 15, 2014, claims related to Plaintiff's laryngoscopy in July 2014, the cancellation of Plaintiff's right shoulder surgery in late 2011/early 2012, and claims related to Plaintiff's left knee surgery prior to December 14, 2014 are time barred."  (Ds' Mem. at 11 (cleaned up).)

[16] Although Plaintiff does not cite to it, Mueller stated in her declaration that she has never met or spoken to Plaintiff.  (ECF No. 88 ¶ 11.)  While there may be a dispute of fact as to whether Mueller and Plaintiff spoke, it is not a dispute of material fact, for the reasons stated in the text.  Further, it would hardly be surprising if Mueller were unaware of the identity of one of many inmates she undoubtedly encountered in the bullpen or medical unit.

("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to black-letter law that § 1983 does not impose respondeat superior liability.") (cleaned up); *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("[A]s a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement.") (cleaned up); *see also Smith v. Conn. Dep't of Corr.*, No. 05-CV-960, 2007 WL 678549, at *4 (D. Conn. Mar. 1, 2007) (collecting cases); *Bennett v. Hunter*, No. 02-CV-1365, 2006 WL 1174309, at *6 & n.33 (N.D.N.Y. May 1, 2006) (same).  Nor is there any evidence that Mueller had reason to believe that Dr. Lee was providing Plaintiff with constitutionally inadequate care.

Moreover, for Mueller to be liable under § 1983 as a supervisor, "there must have been an underlying constitutional deprivation."  *Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) (cleaned up).  Because there is no evidence of a constitutional violation by Lee, any claim against Mueller fails.

With respect to Mueller's decisions affirming (i) DOCCS's outside review agency's denial of a follow-up referral to an outside specialist and (ii) Lee's denial of a Nissen Fundoplication procedure, these decisions do not demonstrate that Mueller "knew of and disregarded an excessive risk to [Plaintiff's] health."  *Odom v. N.Y. State Dept. of Corr. Servs.*, 122 F.3d 1057 (Table), 1995 WL 595550, at *3 (2d Cir. Sept. 22, 1995) ("[Plaintiff's] allegations that the defendants failed to refer him to an outside specialist and that his course of treatment was not aggressive enough do not demonstrate that the prison officials knew of and disregarded an excessive risk to his health.  Accordingly, the district court properly dismissed [Plaintiff's] medical indifference claim."); *see Hernandez*, 341 F.3d at 146-47 (decision to

perform or not to perform a surgery is one of "medical judgment" and "is precisely the sort of issue that cannot form the basis of a deliberate indifference claim"). Plaintiff may disagree with Mueller's evaluation, but she had rational reasons for her decisions.

### C.   Koenigsmann

The Court may dismiss the claims against Dr. Koenigsmann as abandoned because Plaintiff fails to mention Dr. Koenigsmann at all in his opposition papers. *See Martinez v. City of N.Y.*, No. 11-CV-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (cleaned up); *Rodriguez v. City of N.Y.*, No. 08-CV-4173, 2012 WL 1059415, at *13 (E.D.N.Y. Mar. 28, 2012) (section 1983 claim deemed abandoned where Plaintiff failed to address Defendants' argument regarding that claim); *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."); *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (claims abandoned where Plaintiff did not raise any arguments opposing Defendants' motion) (collecting cases). Because Plaintiff is *pro se,* I will overlook his failure to oppose.

Turning to the merits, Defendants argue – and the Court agrees – that Dr. Koenigsmann had no personal involvement in the alleged constitutional violations. Plaintiff attaches to his opposition papers correspondence from his former attorney directed to Koenigsmann, and occasional replies over Koenigsmann's signature.[17] But it is undisputed that Koenigsmann

---

[17] For example, Plaintiff attaches a December 30, 2015 letter from Koenigsmann where Koenigsmann noted that "[t]he Division of Health Services has investigated [Plaintiff's] concerns," that Plaintiff had been seen by an orthopedic specialist on December 10, that a referral for arthroscopy of his shoulder had been approved, that Plaintiff's primary care provider

referred out inmate correspondence to subordinates for response – hardly a surprise, given that DOCCS has more than 50,000 inmates, (ECF No. 87 ¶ 4) – and that others wrote the response letters to which Plaintiff refers, (*id.* ¶¶ 7-10.)[18]  The correspondence simply shows that Koenigsmann received letters and passed them on to a subordinate for a response or investigation, which is insufficient to establish personal involvement.  *See Acosta*, 837 F. App'x at 35-36 (dismissing claims against Koenigsmann for lack of personal involvement where he received and responded to letters); *Goris*, 402 F. App'x at 584 (affirming summary judgment where defendant's "personal involvement was limited to the receipt of two letters from [Plaintiff], which he promptly referred to other individuals for investigation and response"); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCCS Commissioner who received letter from inmate and forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Rush v. Fischer*, 923 F. Supp. 2d 545, 552 (S.D.N.Y. 2013) (Plaintiff's allegation that defendants "received multiple letters from him and referred the matter to others . . . alone is insufficient to constitute the[ir] personal involvement"), *aff'd sub nom Rush v. Canfield*, 649 F. App'x 70 (2d Cir. 2016); *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter.").

---

had prescribed pain medication, and that "[i]t is suggested that [Plaintiff] continue to bring his medical concerns to the attention of the health care staff using the existing sick call procedure." (P's Opp. at 40.)

[18] The "signatures" on the letters read "Carl J. Koenigsmann, M.D.," but are followed by initials indicating that someone else signed Koenigsmann's name.  (P's Opp. at 35, 40.)

Moreover, as discussed, for a supervisor to be liable pursuant to § 1983, "there must have been an underlying constitutional deprivation." *Acosta*, 837 F. App'x at 35.  Because there is no evidence of a constitutional violation by Lee or Mueller, any claim against Koenigsmann fails.

### D.      Dental Care

Plaintiff's claim that Defendants provided him with inadequate dental care is dismissed because, as Defendants argue, "the named Defendants never treated [Plaintiff] for dental issues, and they had no involvement in any decisions regarding his dental care." (Ds' Reply at 7.)  The record reflects that Defendants did not provide any dental care to Plaintiff, (ECF No. 88 ¶ 13; ECF No. 87 ¶ 5; Lee Decl. ¶ 8; ECF No. 86-1 at 97:22-98:9, 102:14-21, 105:24-106:15), and that dentists employed by DOCCS address inmate dental issues, (ECF No. 88 ¶ 6).[19]  While Plaintiff testified that he wrote letters to Dr. Koenigsmann regarding his dental care and that it was his belief that Dr. Koenigsmann was responsible for his overall medical and dental care, (ECF No. 86-1 at 104:20-105:23), "allegations that an official ignored a prisoner's letter are insufficient to establish liability," *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997), as discussed. Further, Plaintiff does not address Defendants' arguments relating to his dental care in his opposition papers, so any such claims may also be dismissed as abandoned. *See Jackson*, 766 F.3d at 194-95; *Felske*, 2012 WL 716632, at *3; *Brandon*, 705 F. Supp. 2d at 268.  Accordingly, Plaintiff's alleged deliberate indifference claims related to his dental care are dismissed.

---

[19] Plaintiff refers to John and Jane Doe defendants in his Complaint, (ECF No. 3 ¶¶ 137-39), but at this stage, Plaintiff should have identified and served the Doe defendants.  Thus, all claims against those defendants are dismissed without prejudice. *See Scott v. City of Mount Vernon*, No. 14-CV-4441, 2017 WL 1194490, at *33 (S.D.N.Y. Mar. 30, 2017) ("As discovery has now closed, the proper course is to dismiss the John Doe Defendants without prejudice."). Further, "[e]ven were [Plaintiff] later to identify the Doe defendants, any amendment to add their names would by now be untimely." *Cruz v. City of N.Y.*, 232 F. Supp. 3d 438, 449 (S.D.N.Y. 2017).

### E.    **Qualified Immunity**

In sum, viewing the facts in the light most favorable to Plaintiff and drawing every reasonable inference in his favor, the evidence as to the medical care rendered by Defendants Lee, Mueller, and Koenigsmann, "implicate[s] medical judgments and, at worst, negligence amounting to medical malpractice," *Sonds*, 151 F. Supp. 2d at 312, which is insufficient to support Plaintiff's Eighth Amendment claim.[20]   At the very least, Defendants are entitled to qualified immunity, as it cannot be said that every reasonable official would disagree with their medical decisions and their belief that those decisions would not violate Plaintiff's rights.  *See Cepeda v. Gusman*, No. 13-CV-1473, 2018 WL 1441188, at *7 (N.D.N.Y. Feb. 7, 2018) ("[I]t was objectively reasonable for Dr. Gusman to believe that based on his own assessment of plaintiff's medical condition, as well as the assessment of outside medical providers, plaintiff did not need surgery to treat his medical condition."), *report and recommendation adopted*, 2018 WL 1441284 (N.D.N.Y. Mar. 21, 2018).

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to send a copy of this Opinion and Order to Plaintiff, terminate the pending motion, (ECF No. 83), enter judgment for Defendants, and close the case. The Clerk shall mail to Plaintiff at 411 E. 178th Street, Apt. 603, Bronx, NY 10457 and 600 E. 179th Street, Apt. 203, Bronx, NY 10457.

---

[20] The Court does not suggest that malpractice occurred.  The record here contains support for Defendants' assertion that there was no deprivation of adequate care.  I need not reach that issue definitively, however, because the record convincingly demonstrates that no Defendant consciously disregarded any excessive risk to Plaintiff's health.

**SO ORDERED.**

Dated: November 1, 2021
      White Plains, New York

_____

CATHY SEIBEL, U.S.D.J.